# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) )  ) Plaintiff, ) ) ) v. ) ) CHIAHA GUILD OF ARTS AND ) CRAFTS, LTD.; SAMANTHA ) HUDGINS, individually and as a ) parent and natural guardian of A.E., a ) minor; and CHRISTEN LANG, ) individually and as a parent and natural ) guardian of J.L. a minor, ) ) Defendants. ) _____ ) | CIVIL ACTION NO. 4:23-cv-00073-WMR |

## FINAL ORDER AND JUDGMENT

This matter is before the Court on the Motion for Judgment on the Pleadings filed by Plaintiff Nautilus Insurance Company ("Nautilus"). [Doc. 20]. Having considered the briefs filed in the record and heard oral argument via Zoom on February 27, 2024, the Court GRANTS the motion for the reasons set forth below and enters a DECLARATORY JUDGMENT that Plaintiff has no duty to defend or indemnify its insured in the underlying state court lawsuit between the above-named Defendants.

## I. STANDARD OF REVIEW

In deciding a motion for judgment on the pleadings, all material allegations of the nonmoving party are accepted as true, and all material facts are viewed in the light most favorable to the nonmoving party. *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023). "Granting judgment on the pleadings is appropriate when 'there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

In this action, Plaintiff Nautilus Insurance Company ("Nautilus") seeks a declaratory judgment that it has no duty to defend or indemnify its insured, Chiaha Guild of Arts and Crafts, Ltd. ("Chiaha"), for the claims asserted against Chiaha in a lawsuit filed by Samantha Hudgins and Christen Lang that is pending in the Superior Court of Floyd County. (*See* Doc. 1; Doc. 1-1).

In the underlying lawsuit, Hudgins and Lang allege that, while attending the Chiaha Harvest Fair on October 23, 2021, their children were exposed to and became infected with the bacteria known as *e. Coli* O157:H7 ("*e. Coli*") due to negligence of Chiaha. (*See* Doc. 1-1). Specifically, they allege that Chiaha "failed to properly implement measures to reduce disease transmission to people on the fair premises." (*Id*. at 13, ¶ 64). Further, Hudgins and Lang allege that their children began to

develop diarrhea on October 26, 2021, requiring hospitalizations to treat the damage the infection caused to their internal organs. (*Id.* at 7, 10, ¶¶ 34–39, 48–53). Lastly, they seek damages for: lost wages; out-of-pocket expenses; past and future medical expenses for the treatment of their children's injuries; deprivation of their children's services; their children's past and future physical and mental pain and suffering; and other harms and losses to be proven at trial. (*Id.* at 9, 11, ¶¶ 41–42, 55–56).

Chiaha seeks coverage for these claims from Nautilus under insurance Policy No. NN1317261 (the "Policy"), which was in effect from October 22, 2021, to October 25, 2021. (Doc. 1-2 at 3.) The Commercial General Liability Coverage Form (the "CGL Form") in the Policy applies, in pertinent part, to "those sums that [Chiaha] becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies." (*Id.* at 18, Section I - COVERAGES, subsection 1.a.). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 30, Section V – DEFINITIONS, subsection 3). The CGL Form further provides that the "bodily injury" must occur during the policy period for coverage to apply (*id.* at 18, Section I – COVERGAES, subsection 1.b.(2)) and that Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' … to which the insurance does not apply." (*Id.* at 18, Section I - COVERAGES, subsection 1.a.).

Among other exclusions, the Policy contains both a Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants Exclusion ("the Microorganisms Exclusion") (*see* Doc. 1-2 at 43) and a Communicable or Infectious Disease Exclusion ("the Infectious Disease Exclusion") (*see* Doc. 1-2 at 48).  The primary issue before the Court is how these two exclusions should be interpreted in determining whether coverage exists under the Policy for the claims in the underlying lawsuit.

In pertinent part, the Microorganisms Exclusion states that coverage under the Policy does not apply to:

> 'Bodily injury' … arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of … of any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, [or] infectious agents[.]

(Doc. 1-2, p. 43.) However, the Microorganisms Exclusion contains an exception. Specifically, it states that "this exclusion does not apply to any … bacteria, microorganism or biological organisms that are, are on, or are contained in, a good or product intended for bodily consumption." (*Id.*)

Thus, if the Microorganisms Exclusion was the *only exclusion* in question, the negligence claims in the underlying lawsuit against Chiaha would be covered to the extent that the claims involve bodily injury (illness) caused by food and other

consumables contaminated with *E. coli* bacteria. But, such is not the case. The Policy also contains the Infectious Disease Exclusion, which provides:

> **1.** This insurance does not apply to 'bodily injury' … arising out of any actual or alleged transmission of or exposure to a 'communicable or infectious disease.'
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:
>
> **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spreading a "communicable or infectious disease";
> **b.** Testing for a "communicable or infectious disease";
> **c.** Failure to suppress or prevent the spread of the "communicable or infectious disease"; or
> **d.** Failure to report the "communicable or infectious disease" to authorities.
>
> \*\*\*
>
> **3.** We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any "communicable or infectious disease".

(Doc. 1-2 at 48.) The Infectious Disease Exclusion defines the term "communicable or infectious disease" as "any disease, illness or condition contracted through direct or indirect contact with or exposure to any form of pathogens such as, but not limited to, **bacterium**, fungus, marker, microbial agent, microorganism, organism, protozoa, virus or any other source that induces or is capable of inducing the disease, illness or condition." (*Id.*) (emphasis added). This Exclusion contains no exceptions.

The Policy was issued in Georgia and, thus, the interpretation of the Policy is governed by Georgia law. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270-71 (11th Cir. 2014). In Georgia, policy interpretation is a question of law to be decided by the court. *Varsalona v. Auto-Owners Ins. Co.*, 281 Ga. App. 644, 645–46 (2006). If an insurance policy is ambiguous, meaning capable of more than one reasonable interpretation, Georgia's statutory rules of construction require it to be "construed strictly against the insurer/drafter and in favor of the insured." *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996); *Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686, 688 (Ga. 1989); *see also* O.C.G.A. § 13-2-2 (5). However, "[w]here the contractual language [of the policy] unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008).

Having reviewed the two exclusions in question, the Court finds no ambiguity regarding the issue of coverage. The Microorganisms Exclusion excludes from coverage any claims for bodily injury arising out of exposure to microorganisms, such as bacteria. Although this Exclusion contains an exception which specifies that it does not apply to bacteria found on (or in) food and other consumable products, this "exception" does not, itself, provide such coverage. The exception merely defines the parameters of this particular Exclusion. Thus, in interpreting the Policy,

the Court "must examine more than an isolated sentence or term; [the Court] must read each phrase in the context of all other provisions" of the Policy as a whole in determining coverage. *Capital Alliance Ins. Co. v. Cartwright*, 236 Ga. App. 554 (1999). In doing so, the Court finds that the Infectious Disease Exclusion very clearly excludes from coverage any claim for bodily injury (illness) arising out of exposure to any form of pathogens, including bacterium, with no exceptions.

Defendants attempt to nullify the Infectious Disease Exclusion by focusing on the "exception" to the Microorganisms Exclusion. (Doc. 24 at 17–18.) Specifically, they contend that this exception is inconsistent with the application of the Infectious Disease Exclusion, rendering coverage "largely illusory." (*Id.* at 18–19.) However, their analysis conflicts with Georgia's clear rules of policy interpretation.

Georgia law is clear that exclusions from coverage must be read independently of each other, and where one exclusion is unambiguous, it operates to bar coverage for the underlying claims. *Cartwright*, 236 Ga. App. 554, 556 (1999). As the Court of Appeals has explained,

> [E]ach exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.

*Fid. Nat. Title Ins. Co. of New York v. OHIC Ins. Co.*, 275 Ga. App. 55, 58 (2005).

Following these principles, whether the claims asserted against Chiaha would fall within the "exception" within the Microorganisms Exclusion is immaterial and has no bearing on the independent application of the Infectious Disease Exclusion. Because the Infectious Disease Exclusion unambiguously precludes coverage for the claims asserted against Chiaha in the underlying state court lawsuit, Nautilus is entitled to declaratory judgment.

### III.  CONCLUSION

For the above reasons, it is hereby **ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [Doc. 20] is **GRANTED**. Accordingly, the Court enters a **DECLARATORY JUDGMENT** that Nautilus has no duty to defend or indemnify Chiaha for the claims asserted against it in the underlying state court lawsuit. The Clerk of Court is directed to close this case.

SO ORDERED, this 7th day of March, 2024.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE